IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| RENEE GERTRUDE DANIELS, | Chapter 7 |
| --- | --- |
| | Case No. 03-bk-09212 |
| | Adv. No. 05-ap-00387 |
| Debtor. | MEMORANDUM DECISION |

## I. INTRODUCTION

This matter comes before the Court on a "Motion for Relief from Judgment and Motion to Quash Garnishment and/or Enter Order Satisfying Judgment" ("Motion") filed with the Court on June 11, 2008 by Renee Gertrude Daniels (the "Debtor") and Timothy Daniels. Constantino Flores, the duly appointed Chapter 7 Trustee, filed and served his response on July 11, 2008.

After conducting hearings in the matter on July 15 and August 6, 2008, taking into consideration the arguments of each of the parties, the documents filed, and the entire record before the Court, the Court has set forth in this decision its findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, Bankruptcy Rule 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§ 1334 and 157 (West 2008).

## II. FACTUAL BACKGROUND

In 1992, the Debtor and her then husband, Timothy Daniels ("Mr. Daniels"), purchased certain real property located at 6757 N. 44th Avenue, Glendale, Arizona (the "Property"). The Debtor, Mr. Daniels, and the Debtor's mother, Ann Brown ("Ms. Brown) held

title to the Property as joint tenants, each with a one-third interest therein. On April 3, 1995, the Maricopa County Superior Court entered a Decree of Dissolution ("Divorce Decree") that dissolved the Daniels' marriage. Pursuant to the Divorce Decree the Property was to be appraised and listed for sale.[1] However, instead of selling the Property, the Debtor and Mr. Daniels executed a quit claim deed, conveying their interest in the Property to Ms. Brown on or about April 9, 1995.

On May 29, 2003, the Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Petition Date"). A few months after the Petition Date, on September 16, 2003, the parties recorded the quit claim deed to Ms. Brown.[2] Subsequently in January 2005, the Property was sold to Fresh Start Properties for $53,000. The warranty deed for the Property was recorded on January 18, 2005. The Property was sold without the Trustee's knowledge.

The Trustee commenced the above-captioned adversary on May 25, 2005 in an effort to avoid the post-petition transfer of the Property and to recover damages in the amount of $47,000. At the time, the Trustee argued that there was equity of not less than $47,000 over and above all liens encumbering the property.

On December 3, 2005, the Trustee filed a "Motion for Entry of Default Judgment." Mr. Daniels filed a Response on December 21, 2005. The Court set a hearing on the request for default judgment on February 1, 2006. Neither the Debtor nor Mr. Daniels appeared before the Court, and the Court granted the Trustee's request for default judgment. On March 6, 2006, default judgment was entered against the Debtor, Mr. Daniels and Ms. Brown in the principal amount of $47,000. Of this amount, the Trustee concedes that the estate was entitled to only $15,666.66, representing the Debtor's one-third (1/3 interest) in the Property's equity. To date, the Trustee has collected approximately $8,000 pursuant to a writ of garnishment of the Debtor's earnings.

---

**1.** *See* Motion, Docket Entry No. 38, Exhibit A.

**2.** *See* Motion, Docket Entry No. 38, Exhibit D.

III. DISCUSSION

The Debtor and Mr. Daniels request that the Court 1) vacate the default judgment; 2) quash the Writ of Garnishment; or 3) reduce the damage amount awarded to the Trustee. The Trustee contends that the relief requested in the Motion is time barred and fails to meet the grounds for relief from a final judgment as set forth in Rule 60 of the Federal Rules of Civil Procedure. Moreover, the Trustee requests that the Court not quash the Writ of Garnishment, and instead modify the amount of the judgment.

A. MOTION FOR RELIEF FROM JUDGMENT

Rule 60 of the Federal Rules of Civil Procedure authorizes the Court to relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not be discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief. *See* Fed.R.Civ.P. 60 (b).

1. Improper Notice.

According to Mr. Daniels he was never served with the summons or complaint by the Trustee, and was, therefore, denied due process. In addition, he never received notice of the Application for Default or hearing thereon. At the initial hearing on the Motion to Vacate Default Judgment, the counsel for the Trustee acknowledged that service upon Mr. Daniels was improper in this case. The Trustee served Mr. Daniels at 6757 N. 44th Avenue, Glendale, Arizona. However, Mr. Daniels' correct address, at the time, was 2720 Dorsey Lane, Tempe, Arizona. A review of the Electronic Docket confirms Mr. Daniels' allegations. From the inception of the case, Mr. Daniels was either being bypassed by the Bankruptcy Noticing Center,

receiving no notice of the proceedings, or the Trustee was serving him at an incorrect address.[3]

In addition, the Trustee did argue that irrespective of the improper address utilized by him, the Trustee provided appropriate notice, since the complaint and summons were sent to Mr. Daniels, in care of the Property, and counsel for the Trustee had an independent communication with Mr. Daniels around the time that Mr. Daniels filed his December 31, 2005 response requesting that a default judgment not be entered. First, there is no indication that Mr. Daniels actually received the complaint and summons. Although he was aware generally of the Trustee's concerns, as stated in Mr. Daniels' December 31, 2005 response, that information only was provided to Mr. Daniels after the Trustee had proceeded down the road of filing a motion and trying to obtain a default judgment. There is also no clear factual record by the Trustee that Mr. Daniels was aware of the February 1, 2006 hearing concerning the Trustee's request that default judgment be entered.

Given the failure to serve Mr. Daniels, at the correct address, with the complaint and summons, and the other deficiencies of notice as outlined herein, the Court concludes that Mr. Daniels was denied due process. The notice requirement demands more than the parties simply being aware of the litigation. U.S. v. Castro, 243 B.R. 380 (D.Ariz. 1999). The purpose of notice under the Due Process Clause of the United States Constitution is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.' Memphis Light, Gas and Water Division v. Craft, 436 U.S. 1, 14, 98 S.Ct.. 1554 (1978). Mr. Daniels did not have such an opportunity in this matter.

2. The Motion to Vacate is not time barred.

A motion to vacate a judgment under Fed.R.Civ.P. 60(b) must be made within a "reasonable time," Fed.R.Bankr.P. 9024/Fed.R.Civ.P. 60(b), but if a judgment is void, a motion to set it aside may be brought at any time. In re Levoy, 182 B.R. 827 (9th Cir. BAP 1995); In Center Wholesale, Inc., 759 F.2d 1440, 1448 (9th cir. 1985). The Trustee argues that the Motion

---

**3.** *See* Docket Entry Nos. 10, 25, 26, and 29.

to Vacate Default Judgment is time barred, since it has been more than two years since the Court entered the judgment. A judgment is void when it is found that there has been defective service of process that is inconsistent with due process of law. Mason v. Genisco Tech Corp, 960 F.2d 849 (9th Cir. 1992). In this case, the Court has reviewed the record, and it clear that Mr. Daniels was denied due process of law. Therefore, the default judgment is void. As noted above, since the judgment is void, the motion to set aside the judgment may be brought at any time. The Trustee is incorrect that there is a two-year limitation to bringing such a motion. The Court concludes that based upon this record, Mr. Daniels filed and served his Motion to Vacate Default Judgment within a reasonable time.

### 3. The default judgment should be set aside on the merits..

Default judgments are construed under Rule 60(b) subject to two constraints. Morris v. Peralta, 317 B.R. 381 (9th Cir. BAP 2004). First, Rule 60(b) is remedial in nature and liberally applied. Second the policy favoring deciding cases on the merits means that the "finality interest should give away fairly readily" to the merits. Peralta citing TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 696 (9th Cir. 2001). Three factors to consider with respect to vacating a default judgment are: 1) whether the defendant's culpable conduct led to the default; 2) whether the defendant has a meritorious defense; and 3) whether reopening the default judgment would prejudice the plaintiff. Peralta at 696. A party seeking relief from default judgment bears the burden of demonstrating that these factors militate in favor of vacating the judgment. Id.

The Peralta factors weigh in favor of granting Mr. Daniels his requested relief. It does not appear, and the Trustee has not alleged, that Mr. Daniels engaged in any culpable conduct. Rather, it was the Trustee's service of process that was faulty. As noted, the fact that Mr. Daniels was generally aware of the underlying complaint in December 2005 is not sufficient to provide due process to him. Further, the Debtor and Mr. Daniels have a meritorious defense. First, the Trustee entered a judgment against all parties for the amount of $47,000. The Trustee

5

Case 2:05-ap-00387-SSC    Doc 47    Filed 08/25/08    Entered 08/25/08 10:18:16    Desc
Main Document    Page 5 of 10

concedes that since the Debtor only had a one-third interest in the Property at the Petition Date, the most that the Trustee would be entitled to receive is a one-third interest in the equity. Hence, the default judgment is incorrect as to amount as to all parties. Finally, reopening the default judgment will not prejudice the Trustee. The Debtor and Mr. Daniels concede that the Trustee is entitled to some judgment, the dispute simply centers on the amount. Moreover, the Trustee already holds more than $8,000 in garnished wages from the Debtor. Based upon the foregoing, the Court concludes that granting the Debtor's and Mr. Daniels' Motion to Vacate Default Judgment is appropriate under the circumstances.

### B. DEFAULT JUDGMENT AMOUNT

Upon the Court's vacatur of the default judgment, the issue now becomes what is the proper amount of the judgment. The Debtor and Mr. Daniels acknowledge that they erred in not recording Ms. Brown's quit claim deed until September, 16, 2003, a few months after the Debtor's Petition Date. Thus, the Trustee had a legitimate legal interest in the Property on the Petition Date. The Debtor and Mr. Daniels concede that the estate is entitled to the Debtor's one-third (1/3) interest in the Property's equity. In order to determine the correct amount, the Court must ascertain the value of the Property, and resulting equity, in January 2005 when the Deed concerning the sale of the Property was recorded and the settlement statement was executed by the Defendants.

Mr. Daniels testified that the property sold, in January 2005, to Fresh Start Properties for $53,000.[4] After paying the liens on the property, and less the costs of sale in the total amount of $33,104.68, only $19,897.904 remained to be divided between Mr. Daniels, the

---

**4.** The Defendants executed the closing documents in December 2004, but the warranty deed to Fresh Start Properties was not recorded until January 2005. For purposes of this decision, the Court will utilize the transfer date as being in January 2005. However, the Debtor and Mr. Daniels do not draw a distinction between the value of the Property in December 2004 and January 2005, and the Court concludes that there is no factual difference in the value.

6

Debtor, and Ms. Brown.[5] Therefore, each individual was entitled to approximately $6,663 for their one-third (1/3) interest in the Property. Accordingly, the Debtor and Mr. Daniels argue that the Trustee would only be entitled to $6,663, and since approximately $8,000 has already been garnished from the Debtor's wages, the judgment should be considered satisfied at this point and the garnishment as to the Debtor's wages should be quashed.

According to the Trustee, the estate is entitled to no less than $15,666.66, representing the Debtor's one-third (1/3 interest) in the Property's equity. The Trustee argues that the value of the Property was in the range of $75,000 to $80,000 in January 2005, that the Defendants sold the Property for substantially less than its value at the time, and that the actual amount of the equity was not less than $47,000 above all liens encumbering the Property. The Trustee contends that the value of the Property was significantly higher than the $53,000 amount paid by Fresh Start Properties and that the Trustee should have a default judgment entered against the Debtor and Mr. Daniels for the amount of one-third of $47,000 or $15,666. Moreover, since the default judgment has not been paid in full, the garnishment against the Debtor's wages should continue.

Mr. Daniels testified first. He itemized the repairs to the Property and stated that he believed that said deficiencies would the Property's value. The Property was in foreclosure and had been vacant for some time at the time of its sale to Fresh Start. Mr. Daniels testified that the water at the Property had been shut off for several months, and he was unclear as to whether that had created structural issues. He noted that although he had tried to clean up the Property prior to its sale, the carpeting was not in the best of condition, the kitchen probably needed to be updated, and the interior of the Property needed to be redone. Mr. Daniels further testified that he could no longer afford the mortgage payments on the Property, and he was concerned with the potential liability of all of the Defendants the longer they retained title to the Property.

---

**5.** *See* Motion, Docket Entry No. 38, Exhibit G. The parties provided a copy of the U.S. Department of Housing and Urban Development January 27, 2005 Settlement Statement which set forth the amounts noted.

According to Mr. Daniels, in addition to the Fresh Start offer, the Defendants had received two other offers. One of the parties offered to pay the balance owed on the liens encumbering the Property, and the other party offered to purchase the Property for $41,500. Thus, in reviewing their options, the Defendants believed that the Fresh Start Properties purchase offer of $53,000 seemed reasonable and was market value. However, Mr. Daniels conceded that he was also well aware that Fresh Properties was purchasing the Property with the intent of reselling the Property for profit.[6]

The Trustee then called Denise "Dee" Kepp, a real estate agent, whom he enlisted in August 2004 to appraise the property. Ms. Kepp is an experienced and qualified real estate agent who has been licensed since 1989. Ms. Kepp is a graduate of the Real Estate Institute. She is currently the President-Elect of the Southeast Regional Association of Realtors. Additionally, Ms. Kepp has been assisting Trustees with appraisals of real estate for over the last 8-9 years.

The Trustee engaged Ms. Kepp in August 2004 to provide an appraisal of the property. Ms. Kepp admitted that she never got to view the inside of the Property, and essentially did a "drive-by" appraisal. However, she did analyze comparable properties and determined that similar properties were selling in the high $70,000 to low $80,000 range. Moreover, such properties were selling within 30 - 60 days of being listed on the market. Ms. Kepp further testified that she was familiar with Fresh Start Properties, and knew that the company purchased real estate that was "distressed" or that was owned by "individuals in distress."

Ms. Kepp acknowledged that she did not have the ability to inspect the interior of the Property, and would not be able to quantify the difference in value if the Property had, in fact, needed significant repairs. She did carefully listen to Mr. Daniels' testimony as to all of the deficiencies with the Property when it was sold, but she was unable to discern what repairs were cosmetic, or related to the desires or preferences of the purchaser, and what repairs were critical

---

**6.** *See* Exhibit 2, Page 8.

8

to the marketability or safety to anyone purchasing the Property. While the Court recognizes that Ms. Kepp is an experienced and well qualified real estate agent, the Court does have concerns regarding the method of her valuation. Without a thorough inspection of both the exterior and interior of the Property, her valuation must be subject to question.

There is a significant difference in the proposed value of the Property, as set forth by the Trustee and the Daniels. The Daniels urge the Court to adopt the $53,000 sale price as the appropriate value of the Property, resulting in approximately $19,000 in equity, with the Trustee being entitled to one-third of that amount. Conversely, the Trustee argues that the value of the Property was substantially higher, between $70,000 to $80,000, with $47,000 in available equity, and the bankruptcy estate entitled to one-third of that amount.

The Court recognizes that the Property was probably worth more than the $53,000 sales price in January 2005. However, the Court does note that Mr. Daniels did receive two other offers, both of which were significantly less than the actual sales price. So, the Fresh Start offer was the best offer at the time, although no doubt under market value. Fresh Start readily admitted to the Debtor and Mr. Daniels, in the contract concerning the purchase of the Property, that it intended to sell the property for a higher price. Conceivably, this would be done after investing some funds into refurbishing the Property. However, given Ms. Kepp's failure to inspect the Property and the other offers that the Defendants received around the time of the sale of the Property, the Court concludes that the Debtor and Mr. Daniels have presented more cogent evidence as to the value of the Property at the time of its sale.

Based upon the evidence presented by the parties, the Court concludes that the Property should be placed at a value of $63,000. This value accords more weight to the evidence presented by Mr. Daniels as to the deficiencies with the Property at the time of the sale and to the other offers received by the Defendants. It also accords the appropriate amount of weight to Ms. Kepp's exterior view of the Property and her comparison to the comparable sales at the time. Quite simply, the Property had been vacant for some time, the water had been turned off for

9

approximately two months, the Property needed updating in the interior, and could not be sold for the $70,000 to $80,000 that Ms. Kepp estimated. Therefore, the Court concludes that the value of the property for the purpose of determining the amount of the judgment is $63,000. The Court will then subtract $33,104.68,[7] which leaves $29,895.32 in total equity in the Property. Thus, the Trustee is entitled to one-third (1/3) of $29,895.32, which is $9,965.10. The Trustee has already been paid over $8,000 pursuant to the writ of garnishment against the Debtor. Therefore, the Trustee is directed to lodge a form of order setting forth $9,965.10 as the total amount of judgment. The Trustee may proceed against the Defendants for the amount of $1,985.10, plus any accrued interest thereon, that still remains due and owing.

## IV. CONCLUSION

The Court concludes that the Trustee shall recover damages in the amount of $9,965.10, plus interest thereon at the rate set forth in 28 U.S.C. § 1961, from the date that the revised default judgment is entered against the Defendants on the docket, until the Trustee is paid in full. The Debtor and Mr. Daniels are entitled to setoff the amount garnished, pursuant to the writ of garnishment, against any amount that remains to be paid. Once the default judgment is entered, the Trustee shall immediately provide to all of the Defendants the amount still owing on the default judgment, after appropriate set-off, setting forth the principal, interest, and any costs thereon. The Trustee shall lodge, upon notice to the Defendants, an appropriate default judgment.

DATED this 25th day of August, 2008.

_____
Honorable Sarah Sharer Curley
U. S. Bankruptcy Judge

---

**7.** This amount reflects the amount used to payoff the liens encumbering the property, as well as the costs of sale, at the time the property was sold to Fresh Start Properties.

10